Plaintiff, Francis B. Trew, brought the present suit against Standard Supply and Hardware Company, Inc., (hereinafter called "Standard") alleging that he had been employed in the capacity of superintendent or foreman of production by Vendome Petroleum Corporation (which we will hereinafter designate as "Vendome") at a salary of $175.00 per month, and that there is due him salary for the months of May through November, and the first eight days of December, 1942, for services performed in connection with the oil and gas well operations of his employer on the Kenilworth and St. Mary Plantations in St. Bernard Parish, Louisiana. He also claims that Vendome owes him for certain "expenses paid by him while performing work," and also for certain advancements made by him for the account of the corporation to three of its employees. The claim is itemized as follows:
Wages due $1,271.66 Advances made to employees 95.00 Expenses 215.88 Interest 237.38 Cost of preparing and recoring lien 10.00 Attorneys' fees under Act 6 of 1942 182.99 ________ $2,012.91
It is further alleged that on March 5, 1943, plaintiff filed for recordation in the mortgage records of Orleans and St. Bernard Parishes, an affidavit claiming a lien and privilege on the mineral leases, oil wells and other described property of Vendome located *Page 428 
upon the two plantations, for the amount of the claim.
Trew sues Standard on the theory that it acquired the property of Vendome, in the proceedings entitled: "Standard Supply and Hardware Company, Inc., v. Vendome Petroleum Corporation," No. 2854 of the docket of the Twenty-fifth Judicial District Court for the Parish of St. Bernard, and alleges that he is entitled to have his lien and privilege thereon recognized and enforced.
Plaintiff prayed for a judgment in personam against Standard for the amount of the claim, with recognition and enforcement of the lien and privilege.
To the petition, Standard interposed two exceptions, (1) the prescription of one year, and (2) nonjoinder of parties defendant.
Before the exceptions were tried, plaintiff filed a supplemental petition which named Vendome as a codefendant, and in which he prayed for a solidary judgment in personam against both Vendome and Standard, with recognition of his lien and privilege, and for a sale of the property. The exceptions were overruled by the lower court on July 29, 1946.
Standard then filed its answer to both petitions, denying all allegations. In the alternative, this defendant pleaded that it had never acquired Vendome's property as alleged, but that Vendome had granted it a mortgage thereon to secure a large indebtedness. Standard prayed for a dismissal of plaintiff's suit, or in the alternative that its mortgage be decreed to have preference and priority over any lien claim of plaintiff. No pleading was filed by Vendome, and in due course a preliminary default was entered against this defendant.
The matter then proceeded to trial on its merits as to Standard, and for a confirmation of the preliminary default against Vendome. On December 6, 1946, the lower court rendered judgment against both defendants in solido for $1,582.54, with legal interest from March 3, 1943, until paid, plus ten per cent attorneys' fees and costs. The judgment further recognized plaintiff's lien and privilege on the property described in the original petition, and ordered that it be sold and that the amount due plaintiff be paid with preference and priority. Standard has taken this appeal from the judgment. No appeal has been perfected by Vendome, and we are concerned only with the judgment insofar as it operates against Standard.
[1] At first glance the amount of plaintiff's claim appears to exceed our maximum jurisdictional amount, but it is to be noted that included therein is the item of interest which had accrued up to the date suit was filed. Deducting the interest, which is not to be considered in determining appellate jurisdiction, the amount claimed is below $2,000.00 and the matter falls within our jurisdiction. Art. 7, secs. 10, 29, La.Const. 1921; Buras et al. v. Fidelity Deposit Company of Maryland, 195 La. 244, 196 So. 335.
[2] Appellant has reurged before us the two exceptions. In their argument respecting the exception of prescription of one year, counsel concede that the affidavit of plaintiff had been timely recorded in the mortgage records, but contend that the exception should be maintained for the reason that Section 3 of Act No. 68 of 1942, which repealed and supercedes Act No. 100 of 1940, provides: "That unless interrupted by suit thereon, such lien and privilege, as herein provided for, shall prescribe and become ineffective one year from the date of recordation." Counsel point out that the suit was not filed until April 4, 1946, or three years after the affidavit had been recorded.
Plaintiff's counsel agree that a laborer claiming a lien and privilege under the act must file suit thereon within one year from the date the affidavit is recorded. However, in seeking to avoid the effect of the plea, plaintiff asserts that he was a member of the United States Navy from September 1, 1942, until September 13, 1945, and that no prescription operated against him during that period.
The undisputed facts regarding the tenure of Trew's military service are these: His enlistment in the United States Navy was effected on September 1, 1942, but as he was not immediately called for active duty, he continued in the employment of Vendome through December 8, 1942; on *Page 429 
the following day (December 9, 1942) he was ordered to active duty; on March 11, 1943, he was transferred to the Pacific theater of operations, and was not discharged from the Navy until September 13, 1945.
Plaintiff directs our attention to the Soldiers' and Sailors' Civil Relief Act of the United States, 50 U.S.C.A. Appendix § 501 et seq., and argues that under its provisions the period for bringing the suit was suspended, and can only be counted from the date of his discharge from naval duties.
The act of Congress of October 17, 1940, Sec. 205, as amended by an act of October 6, 1942, 50 U.S.C.A.Appendix, § 525, provides in part as follows: "The period of military serviceshall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringingof any action or proceeding in any court, board, bureau, commission, department, or other agency of government by oragainst any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service, * * *." (Italics ours.)
Section 604 of the act, 50 U.S.C.A.Appendix, § 584, in part reads: "This Act shall remain in force until May 15, 1945: Provided, That should the United States be then engaged in a war, this Act shall remain in force until such war is terminated by a treaty of peace proclaimed by the President and for six months thereafter: * * *".
At the time initially designated for the termination of the act, the United States being then engaged in a war with the Imperial Government of Japan, its provisions remained in force, and were in force when Trew received his discharge from the Navy.
Counsel for Standard maintain that the Soldiers' and Sailors' Civil Relief Act has been widely construed in Louisiana and other states, and that the majority view of the courts does not confer an absolute right of operation or stay of a proceeding unless the rights of the serviceman can not or could not be preserved or protected because of his military service, and that not all persons in the military service are automatically entitled to the benefits of the act. They argue that Trew had notice of his imminent active duty, and could have, without difficulty or inconvenience, filed his suit before being called by the Navy, and that he is not entitled to invoke the benefits of the act. In support of this argument, counsel cite the case of Charles Tolmas, Inc., v. Streiffer, 199 La. 25, 5 So.2d 372. In that case, a soldier, the lessee of certain immovable property, was sued by his lessor for eviction on the ground that there had been a violation of the lease contract. The trial court was of the opinion that there was an ambiguity in the lease contract, necessitating the presence of the respondent to determine the true intention of the parties, and for that reason granted the defendant a stay of the proceedings. The Supreme Court, on application for writs by the landlord, recalled the order of stay, without prejudice to either party, as a reading of the lease showed that the trial judge was in error in his conclusion that an ambiguity existed therein. The Court had before it for consideration, Sections 100 and 201 of the act, which authorized a stay of judicial proceedings wherein a member of the military forces was a party, in certain cases where the rights of the party would be prejudiced due to his absence and inability to defend or prosecute the action.
In the instant case, however, we are not dealing with a stay of judicial proceedings. The question presented is whether plaintiff's right of action perempted during his tenure of military service, and under the unambiguous language of Section 205, the one year period for bringing the suit was suspended until his discharge. The exception of prescription was properly overruled by the district court.
[3, 4] The exception of nonjoinder of parties defendant is likewise without merit. As we have before stated, Vendome was made a defendant by means of the supplemental petition, and we believe, as did the lower court, that the objection was overcome thereby. Appellant argues that even though Vendome had been named as a codefendant in the supplemental petition, the service of citation upon it was improperly *Page 430 
made, and that such defective citation has the effect of nullifying the attempt to bring Vendome into the suit. Both counsel, in their briefs and in oral argument, stated their respective versions as to whether the service of citation on Vendome was properly made. However, we are not concerned with that detail. An exception of improper service is personal to him upon whom the service has been made, and can not be urged by his co-defendant. Tinney v. Vittur, 134 La. 549, 64 So. 407.
[5] Appellant's counsel vehemently contend that the lower court erred in rendering against it a personal judgment, for the reason that the only claim which plaintiff has asserted, insofar as Standard is concerned, is one in rem, as there is no allegation in either of the petitions, and no evidence in the record, showing that there had been a relationship of employer and employee, or any other contractual relationship, between Standard and the plaintiff. This contention appears to us to be correct. Standard was not indebted unto plaintiff for any amount; he had been employed by Vendome and whatever amount is due him is owed by that corporation. The judgment, insofar as it casts Standard in personam for the claim made by plaintiff, is clearly erroneous.
All parties concede that this matter resolves itself into the question whether the lien of Trew primes the mortgage of Standard. The record shows that on December 9, 1941, Vendome granted a mortgage to Standard on the oil leases known as Kenilworth 1, Kenilworth 3 and St. Mary 1, together with the oil wells known as Kenilworth No. 1 and St. Mary No. 1, and also upon certain equipment and machinery, to secure a note for $166,887.99. There was assigned to Standard by Vendome in the mortgage, as additional security, certain royalty interests in the two oil wells.
The proceeding No. 2854 of the lower court was offered in evidence and is before us as part of the record. Our examination thereof shows that it involved only a demand by Standard for an executory process on the mortgage. On November 17, 1944, the court rendered an order directing that a writ of seizure and sale issue, but it does not appear that any further steps were taken by Standard in the matter. It is not shown that Standard acquired any of Vendome's property, and plaintiff is in error in alleging that Standard purchased the property subject to the mortgage.
[6] It appears that the mortgaged mineral leases were acquired by Vendome by assignment from Thompson Petroleum Corponation, the original lessee, which had acquired them from the land owners, Harvey W. Robinson et al. The royalty interests pledged in the mortgage as additional security for the indebtedness, arose out of those leases. Counsel for appellant maintain that the leases no longer exist, as they were declared null and void by the court a qua in the proceedings: "Harvey W. Robinson et al. v. Vendome Petroleum Corporation et al.," No. 2823 of its docket, and that such being so plaintiff has no lien or privilege on the said leases. Record No. 2823 was offered in evidence, and an examination of it discloses that on July 27, 1944, a judgment was rendered and signed in favor of Harvey W. Robinson et al., the land owners, and against Vendome, annulling and avoiding certain mineral leases, but we notice that by the terms of the judgment it does not apply to "* * * that portion of Kenilworth Plantation situated North of Bayou Terre aux Boeufs," and a certain described portion of St. Mary Plantation. We are given to understand by his counsel that the excepted property is the subject of the leases upon which Trew claims his lien, and that the judgment of nullity does not affect them to any extent. Appellant, while not conceding this to be correct, has not answered the statement made by plaintiff. But, whether the judgment annulled the mineral leases involved in this case is of no moment. Trew's lien was perfected by recordation on March 5, 1943, and on that date the leases were in force and effect as between the land owners and Vendome. The judgment of nullity was not rendered until July 27, 1944, and it had no retrospective effect insofar as the rights of the plaintiff are concerned. *Page 431 
[7] Plaintiff, in the affidavit, claims his lien under the provisions of Act No. 145 of 1934, as amended by Act No. 100 of 1940. His suit, however, was brought under the provisions of Act No. 68 of 1942, which repealed and supercedes the earlier acts. The repealing clause is in the following language: "That all laws or parts of laws in conflict herewith, particularly Act 145 of 1934 and Act 100 of 1940, are hereby repealed; provided that all rights arising under existing laws shall notbe affected by the provisions of this act." (Italics ours.)
Act No. 145 of 1934, as amended, and Act No. 68 of 1942 are upon the same subject matter, i. e., the establishment of liens and privileges in behalf of laborers and certain other classes of persons, on oil, gas and water wells and the leases upon which they are located, as well as machinery and equipment, etc., located thereon, and provide the procedure necessary for their perfection. The acts read almost identically, except that in the latter it is provided that a laborer's lien and privilege shall extend to the cost of preparing and recording the lien affidavit, and for ten per cent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection.
We quote that portion of Section 1 of both acts which is pertinent to this case, the italicized words being those added to the language of the earlier statute by Act No. 68 of 1942, as follows: "That any person, * * * who shall perform any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who shall perform any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, shall have a lien and privilege on the oil produced from said well or wells and stored on the lease whereon such well or wells are located, and on oil, gas or water well or wells and the lease whereon the same shall be located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and all other structures thereto attached or located on said lease, for the amount due for such labor or service, in principal and interest, and for the cost of preparing and recording such lien and privilege, as well as ten per cent attorney's fees in theevent it becomes necessary to employ an attorney to enforcecollection thereof. * * *"
The uncontradicted evidence shows that Trew had been employed by Vendome as alleged, and that there is due him $1,270.16 for services performed on the Kenilworth 1, Kenilworth 3 and St. Mary 1 leases.
The Constitution of Louisiana, Art. 3, sec. 8, provides that the Legislature shall meet biennially at the seat of government on the second Monday in May, and that its sessions shall be limited to sixty days, and according to Art. 3, sec. 27, all laws enacted shall become effective at 12 o'clock, noon, on the 20th day after the Legislature shall have adjourned. The 1942 body met on May 11th of that year and adjourned on July 9th, and Act No. 68 became a law at noon on July 29, 1942.
We are confronted with quite a unique situation — Act No. 145 of 1934, as amended by Act No. 100 of 1940, is controlling as to a portion of plaintiff's labor claim, and the other part comes within the purview of Act No. 68 of 1942. Our calculation shows that the 1934 act, as amended, should be applied as to the following salary due plaintiff:
May $173.00 June 175.00 July (28 days) 158.06 _______ Total $508.06
That part of the claim governed by Act No. 68 of 1942 is:
July (3 days) $ 16.94 August 175.00 September 175.00 October 175.00 November 175.00 December (8 days) 45.16 _______ Total $762.10
In providing for the priority of laborer's liens, Section 2 of both the 1934 act, as amended, and the 1942 enactment reads as follows: "* * * such lien and privileges shall be superior to all other liens *Page 432 
and privileges or mortgages against said property, except taxes or a bona fide vendor's lien and privilege; * * *."
There is no evidence showing that Standard has a vendor's lien and privilege on any of the property of Vendome, and the only rights which it has in the property flow from the mortgage above mentioned. Our conclusion is that under the unambiguous language of the statutes the claim which plaintiff asserts for his labor, and which ripened into a lien by virtue of the recordation of his affidavit in the mortgage records on March 5, 1943, primes the mortgage.
[8] The judgment allowed plaintiff legal interest on the claim from March 3, 1943. It was evidently the trial court's intention to fix the date of the recording of the lien affidavit as the date from which the interest should run. However, there appears to be a slight error in this date, for the recordation was effected on March, 5, 1943.
Article 1938 of the Civil Code provides that: "All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated." However, plaintiff claims legal interest only from the date the lien was placed of record, and it should be allowed.
[9] The judgment allowed Trew an attorney's fee of ten per cent on the full amount of the claim. The 1934 act, as amended, made no provision for the collection by a laborer of attorney's fees, but such provision is contained in the act of 1942, and plaintiff is entitled to such fee only on that portion of the labor claim which arose after the effective date of the 1942 enactment.
[10, 11] The judgment appealed from, insofar as it permitted the lien to extend to plaintiff's expenses and advancements, is clearly in error. The lien and privilege asserted by plaintiff is established by the 1934 act, as amended, and by the 1942 act. The purpose of these statutes was, among other things, to protect laborers in the collection of wages for services rendered in oil, gas and water well operations, and beyond the amount of wages due to such laborers, the acts were not intended to, and do not, extend. No provision is made establishing a lien in favor of a laborer for his expenses, or for advancements made for the account of his employer. Laws creating liens are to be strictly construed. Robin v. J. Thomas Driscoll, Inc., La. App., 197 So. 307.
For the reasons assigned, the judgment appealed from, insofar as it applies to Vendome Petroleum Corporation, is affirmed. Insofar as Standard Supply and Hardware Company, Inc., is concerned, the judgment appealed from is amended to the extent that that corporation is relieved from any liability in personam, and that plaintiff, Francis B. Trew, now have judgment against Standard Supply and Hardware Company, Inc., recognizing his lien and privilege on the property described in the judgment appealed from to the extent of $1,270.16, with legal interest thereon from March 5, 1943, until paid, and also for the sum of $10.00 for the preparation and recordation of the lien and privilege in the mortgage records, and with ten per cent attorneys' fees on the sum of $762.10 with interest, with preference and priority over the mortgage held thereon by Standard Supply and Hardware Company, Inc.
And as thus amended the judgment as against Standard Supply and Hardware Company, Inc., is affirmed. Costs of this appeal are to be paid by plaintiff-appellee.
Amended and affirmed. *Page 433